UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RICHARD JOHNSON and )
CATHERINE JARVIS, )
    Plaintiff, )
)    C.A. NO.: 16-11810-DJC
v. )
)
SPEEDWAY, LLC, )
    Defendant. )

## DEFENDANT, SPEEDWAY LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

NOW COMES the defendant, Speedway LLC, and submits this Memorandum of Law and attached exhibits in support of its Motion for Summary Judgment.

I. STATEMENT OF UNDISPUTED MATERIAL FACTS

A. **Factual Allegations:**

The plaintiffs, Richard Johnson and Catherine Jarvis (collectively "Plaintiffs") filed a Complaint against Speedway, LLC for injuries allegedly sustained on October 7, 2014[1] which occurred at the Speedway Service Station, previously known as Hess, located at 1144 Providence Road in Whitinsville, Massachusetts. (*See* Plaintiffs' Complaint attached hereto as **Exhibit A.**) Plaintiffs asserted two counts for negligence based on premise liability and loss of consortium theories. Plaintiffs allege that Speedway had a "duty to exercise reasonable care over said premises and to keep the premises reasonably safe and free from all foreseeable hazards ... including defects that

---

[1] There have been inconsistencies with regard to the alleged date of loss in this lawsuit as the Plaintiffs have subsequently sought to change this date to October 8, 2014 by way of a motion for leave to amend the Complaint, which was denied by this Court, and supplemental discovery responses which were served past the discovery deadline and are the subject of a pending motion to strike. Whether this accident occurred on October 7, 2014 or October 8, 2014 is immaterial for the purposes of this summary judgment motion.

1

may create a potential 'trip and fall' hazard. (*See* Exhibit A, ¶10.) Plaintiffs also allege that Speedway "breached said duty by negligently failing to reasonably maintain, repair or provide warning of the hazardous conditions at the premises." (*See* Exhibit A, ¶11.)

At his deposition, Mr. Johnson testified that this alleged accident occurred on Tuesday, October 7, 2014. (*See* deposition transcript of the plaintiff, Richard Johnson, attached as **Exhibit B**, pp. 14:5-7; 59:23-60:1.) Mr. Johnson testified that he was employed with Brewer Petroleum Service ("Brewer") in October 2014 as a Delivery Driver/Truck Driver. (*See* Exhibit B, pp. 25:9-22; 26:11-24; 33:20-22.) On October 7, 2014, Mr. Johnson was injured on the job in the course of his employment with Brewer. (*See* Exhibit B, pp. 14:5-7; 32:2-13.) On that date, Mr. Johnson went to the Speedway located in Whitinsville, Massachusetts. (*See* Exhibit B, p. 60:12-17.) He had been servicing this location since 2010 and would frequent the location up to three times per week. (*See* Exhibit B, pp. 60:18-61:5; 62:13-63:8.) There were no witnesses to Mr. Johnson's alleged stumbling incident. (Exhibit B, p. 79:6-14.)

On the date of this alleged accident, Mr. Johnson was filling the fuel tank and while waiting for the tank to fill, he began preparing the delivery receipt. (*See* Exhibit B, pp. 69:7-71:7.) It began to rain, so Mr. Johnson started walking sideways along [his] truck between the truck and the hose to get to this truck. (*See* Exhibit B, pp. 71:12-24; 88:1-89:6; 102:21-103:1.) While walking sideways, Mr. Johnson **stepped off the edge** (of the concrete fuel pad) **and stepped into a puddle** ... stumbled to the side and rolled his ankle. (*See* Exhibit B, p. 71:12-24(emphasis added).) He grabbed onto the catwalk of his truck and was able to prevent himself from falling to the ground. (*See* Exhibit B, pp. 75:7-76:13.) At the time, Mr. Johnson stumbled, he was still in the process of filling the

2

tank with diesel fuel. (*See* Exhibit B, pp. 72:1-6; 129:15-18.) After Mr. Johnson stumbled, he observed that the loading process was finished - the tank was full. (*See* Exhibit B, pp. 79:18-80:13.) He then proceeded to empty the diesel hose, disconnected the hose and then onto the next tank to deliver regular grade petroleum. (*See* Exhibit B, pp. 81:23-84:8.) Mr. Johnson then proceeded to put away the equipment, which entailed emptying the hose, putting away the hose and fittings, and closing the tanks and covers. (*See* Exhibit B, p. 84:9-19.) After putting the equipment away, Mr. Johnson went inside the Speedway convenience store to get a final reading from the clerk. (*See* Exhibit B, p. 86:2-16.)

Mr. Johnson testified that he was used to working in confined areas with open holes, potholes and other conditions. (*See* Exhibit B, p. 89:3-13.) In fact, he had walked sideways on prior occasions in this same manner. (*See* Exhibit B, p. 90:2-8.) Mr. Johnson was familiar with the area as he would typically park the truck in the same location and walk in the same general area. (*See* Exhibit B, p. 92:7-18.) On prior occasions, Mr. Johnson had observed the area, which he described as a **depression or deterioration of the asphalt where it meets the concrete.** (*See* Exhibit B, pp. 90:17-91:1 (emphasis added).) After going inside to get final reading, Mr. Johnson returned to his truck and went to inspect the area where his foot stumbled. (*See* Exhibit B, pp. 101:21-102:6.) He observed a puddle that was 3 to 4 feet in diameter and "felt" the depression with his other foot. (*See* Exhibit B, p. 102:1-15).

B. **Transportation Agreement**:

A Transportation Agreement ("Agreement") was entered into between Hess Corporation ("Hess") and Brewer for delivery of petroleum products. (*See*

3

Transportation Agreement attached hereto as **Exhibit C**.) The Agreement became effective on January 1, 2014 and is set to expire on January 1, 2019, with automatic renewals for successive terms of one year; thus, this Agreement was in effect at the time of this alleged accident in October 2014. (*See* Exhibit C, ¶20.) According to this Agreement, Brewer, identified as the "Carrier", is at all times acting as an "independent contractor"; at no time is Brewer, or anyone employed by Brewer, deemed to be an employee, agent or representative of Hess. (*See* Exhibit C, ¶6.) Additionally, Hess is deemed to have no control or supervision over Brewer or its employees and Brewer had no authority to act for or bind Hess. (*See* Exhibit C, ¶6(emphasis added.) Brewer is responsible for all transfer activities, monitoring every aspect of the delivery, furnishing all personnel, ensuring personnel is property trained and licensed, furnishing all vehicles, equipment and supplies, proper maintenance of all vehicles, equipment and supplies, and compliance with all federal, state and local rules. (*See* Exhibit C, ¶¶ 4(j), 5, 7, and 22.)

Brewer drivers are required to following the operating instructions and regulations. (*See* Exhibit C, Hess General Instructions.) As part of the required unloading procedures, Brewer drivers are instructed to "**Stand by – unit during unloading.**" (*See* Exhibit C, Hess General Instructions, p. 9 (emphasis added).) When finished loading, drivers shall "close all truck valves, disconnect bottom loading arms and vapor hose and store in their proper positions." (*See* Hess General Instructions, p. 6.) While discharging, Brewer drivers are to "**Stand by the discharge connections**" and not leave the truck unattended while unloading. (*See* Hess General Instructions, p. 10.)(emphasis added). After loading is completed, drivers are required to report any

mechanical problems to Hess and obtain and maintain the bill of lading/invoice documents. (*See* Hess General Instructions, p. 10.)

According to the Agreement, the Brewer was responsible for "taking any additional precautions necessary to prevent harm" to its "employees and its contractors." (*See* Hess General Instructions Exhibit G, p. 1 of 3.) Carrier will also ensure that all of its contractors will comply with Carrier's obligation under the Agreement. (*See* Hess General Instructions Exhibit G, p. 1 of 3.)

On September 30, 2014, pursuant to the Purchase Agreement by and between Hess Corporation and Speedway LLC dated as of May 21, 2014 ("Purchase Agreement"), Hess Corporation transferred certain assets and liabilities into wholly-owned subsidiaries of Hess Retail Holdings LLC. (*See* Affidavit of Speedway attached hereto as **Exhibit D**, ¶2.) Pursuant to the Purchase Agreement, Speedway LLC acquired all of the membership interests of Hess Retail Holdings LLC. (*See* Exhibit D, ¶3.) On September 30, 2014, Hess Corporation and Marathon Petroleum Company LP entered into an Assignment and Assumption Agreement whereby Hess Corporation assigned the subject Agreement entered into with Brewer. (*See* Exhibit D, ¶4.) Speedway LLC is a wholly-owned subsidiary of Marathon Petroleum Company LP. (*See* Exhibit D, ¶5.) Effective October 1, 2015, Hess Retail Operations LLC, Hess Retail Stores LLC and Hess Realty LLC merged into Speedway LLC. (*See* Exhibit D, ¶7.)

C. **Plaintiff's Expert Opinions:**

Plaintiffs have designated David A Doddridge of D.A. Doddridge & Associates, Inc. as their liability expert. (*See* Report of David Doddridge dated June 20, 2017 attached hereto as **Exhibit E**.) Mr. Doddridge's report dated June 20, 2017 reflects the

statutes and regulations relied upon by Mr. Doddridge in rendering his opinion that Mr. Johnson was injured as the result of a tripping hazard located at the transitional point between the concrete flatwork located above the underground storage tanks and the asphalt paving surrounding the concrete flatwork. (*See* Exhibit E, p. 1.) Mr. Doddridge has opined that there is a dramatic change in elevation between the concrete flatwork and the surrounding asphalt paving and that the vertical height of the transition is approximately 1½ to 2 inches, which represents a hazardous condition and a tripping hazard. (*See* Exhibit E, p. 1.)

In support of his opinion, Mr. Doddridge relies on ASTM F1637-10 "Standard Practices for Safe Walking Surfaces" and OSHA 1910.22 "Surface Conditions". (*See* Exhibit E, pp. 3-5.) Mr. Doddridge has opined that the subject walking surface was not coplanar, flush or even, pursuant to ASTM standard; the change in level was greater than ½ an inch and was not transitioned; the subject walking surface was depressed and was not repaired or maintained to meet the standard; and Speedway failed to comply with OSHA due to the fact that the identified surface condition was hazardous and the hazardous condition was poorly maintained and not repaired. (*See* Exhibit E, pp. 4, 6.)

D. **Photographs**:

Nine (9) photographs depicting the area of this alleged incident were produced by the Plaintiffs as part of their discovery responses. (*See* photographs attached as **Exhibit F;** *see* Exhibit B, pp. 133-146.) These 9 photographs were taken by Plaintiffs' attorney sometime in January 2016. (*See* Speedway incident report attached as **Exhibit G**.) Plaintiffs subsequently produced eleven (11) additional photographs which were

6

purportedly taken by Mr. Johnson in December 2014. (*See* correspondence dated July 27, 2017[2] and photographs attached as **Exhibit H**.)

II. STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party: [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

A fact is "material" only if its resolution will affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Cranshaw v. Cumberland Farms, Inc.*, 613 F.Supp. 2d 147 (2009). Factual disputes that are irrelevant or unnecessary will not be counted; a genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id; see also Cranshaw*. Conclusory allegations, improbable inferences, and unsupported speculations are insufficient to establish a genuine dispute of fact. *Medine-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

---

[2] This letter from counsel and the enclosed eleven (11) photographs were received for the <u>first</u> time after the close of discovery, pursuant to the Scheduling Order, and are the subject of Speedway's pending motion to strike Plaintiffs' supplemental discovery responses.

7

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). The opposing party cannot rest on mere assertions of disputed facts to defeat the motion for summary judgment. *LaLonde v. Eissner*, 405 Mass. 207, 209 (1989).

III. ARGUMENT

A. **Speedway Did Not Breach Any Duty of Care Owed to the Plaintiffs And Cannot be Held Liable for Failure to Warn of an Open and Obvious Condition.**

"Before liability for negligence can be imposed, there must first be a legal duty owed by the defendant to the plaintiff, and a breach of that duty proximately resulting in the injury." *Davis v. Westwood Group*, 420 Mass. 739, 742–743 (1995). An owner or possessor of land owes a common-law duty of reasonable care to all persons lawfully on the premises. *Id.* at 743. "This duty includes an obligation to maintain the 'property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk.'" *Dos Santos v. Coleta*, 465 Mass. 148, 154 (2013), *citing Mounsey v. Ellard*, 363 Mass. 693, 708 (1973). It also includes "an obligation … to warn visitors of any unreasonable dangers of which the landowner is aware or reasonably should be aware." *Davis*, 420 Mass. at 743. "Whether a defendant has a duty of care to the plaintiff in the circumstances is a question of law for the court, to be determined by reference to existing social values and customs and appropriate social policy." *O'Sullivan v. Shaw*, 431 Mass.

8

201, 203 (2000). Assuming that there is a duty to repair or remedy of a dangerous condition, a landowner is "not obligated to supply a place of maximum safety, but only one which would be safe to a person who exercises such minimum care as the circumstances reasonably indicate. *Potvin v. Speedway LLC*, 2017 WL 3971096, 5 (2017), *citing Lyon v. Morphew*, 424 mass. 828, 833, 678 N.E.2d 1306, 1310 (1997).

"Landowners are relieved of the duty to warn of open and obvious dangers on their premises because it is not reasonably foreseeable that a visitor exercising (as the law presumes) reasonable care for his own safety would suffer injury from such blatant hazards." *O'Sullivan*, 431 Mass. at 204. It is well settled that a landowner has no duty to warn of such hazards "because the warning would be superfluous for an ordinarily intelligent plaintiff." *Papadopoulos v. Target Corp.*, 457 Mass. 368, 379 (2010), *citing O'Sullivan* at 206. This open and obvious exception to the duty to warn is based on the assumption that the warning provided by the open and obvious nature of the danger is by itself sufficient to relieve the property owner of its duty to protect visitors from dangerous conditions on the property. *Id.*, *citing* O'Sullivan, 726 N.E.2d at 955. Determining whether a danger is open and obvious entails an objective inquiry into what would be obvious to a person of average intelligence, that is, a visitor with ordinary perception and judgment exercising reasonable care for his own safety. *O'Sullivan*, 726 N.E.2d at 954-955. "In cases where the plaintiff's theory is a negligent failure to warn, the open and obvious nature of the danger causing the injury will therefore relive the landowner of any duty vis-á-vis that danger." *Dos Santos*, 465 Mass. at 158; *see also Matouk v. Marriott Hotel Services, Inc.*, No. 11-12294-LTS, 2013 WL 6152333 (D. Mass. 2013).

In this case, as in *Potvin*, Speedway exercised reasonable care under the circumstances and cannot be held to have breached its duty of care. *See Potvin* supra at 5. The area at issue in this case involves a concrete fuel fill pad and the surrounding asphalt paving. The area of the alleged defect is the "transition point" as referred to by Plaintiffs' expert - the edge where the concrete fuel pad abuts the asphalt paving - which is clearly visible by any person exercising reasonable care and paying attention to their whereabouts. Small variations in the level of the edges of two different materials, such as concrete and asphalt in this case, are to be expected due to weather cycles and normal settlement. To the extent this Court finds this condition to be a defect and/or tripping hazard, which Speedway denies, Plaintiffs' have failed to demonstrate that Speedway negligently maintained or repaired this area.

The condition at issue in this case is the edge of a concrete fuel tank pad and asphalt paving which was not perfectly level – a condition which is open and obvious and should have been apparent to Mr. Johnson had he been exercising reasonable care for his own safety. Moreover, Mr. Johnson testified that he had performed delivery services at this location as many as three times a week for 4 years before his alleged stumbling incident. Thus, Mr. Johnson was familiar with the conditions around the Speedway fuel tanks and was admittedly accustomed to working in confined areas where there are exposed tank holes, surface depressions and potholes. Given the nature of this open and obvious condition, Speedway cannot be held liable for a negligent failure to warn, as alleged, and is entitled to summary judgment as a matter of law.

B.  **The Plaintiffs have Failed to Demonstrate that the Puddle at Issue Resulted from any Defective Condition on Speedway's Premises.**

Plaintiffs allege that Mr. Johnson stepped into a puddle of rainfall and stumbled. However, not a scintilla piece of evidence has been presented that the puddle at issue was caused by any defective design or defective condition on Speedway's premises. Plaintiffs' allegation of an existing puddle, without evidence of any defect on the premises, is insufficient to maintain a negligence action against Speedway.

Without evidence of some inherent defective or defective condition on the premises, along with the presence of water, a defendant cannot be held liable. *Wexler v. Stanetsky Memorial Chapel of Brookline, Inc*, 2 Mass. App. Ct. 750 (1975); *see also Leary v. Jordan Marsh Co.*, 322 Mass. 309 (1948). Where the depth of the puddle is not concretely established, based upon conflicting evidence, it raises doubt as to what reasonable inferences can be drawn concerning the depth of the puddle. *Id.* To be actionable, a plaintiff must show that water from a puddle was present for a greater length of time than naturally is to be expected under the circumstances. *Vaccaro v Univ. of Mass. Memorial* Medical, 24 Mass. L. Rptr 73 (2008); *see also Kirmes v. Stop & Shop Companies,* 1992 Mass. App. Civ. 196, 198–199 (1992) (holding that a dirty puddle of water measuring three feet by four feet was insufficient to prove duration); *see also Wexler,* 2 Mass. App. Ct. at 751 (holding no negligence where a puddle or pool of dirty water between three and four feet in length required inference that water deposit was "thin and perhaps not much more than a film").

In a similar case where a plaintiff alleged that he observed "puddling" and "depressions" in the parking lot on many occasions, the U.S. Dist. Court for the Dist. of Mass. held that the plaintiff failed to demonstrate that any puddle resulted from the

11

improper design, drainage or grading of the property. *See Cranshaw v. Cumberland Farms, Inc.*, 613 F.Supp.2d 147, 149-150 (2009). As recognized by the Court in *Cranshaw*, all puddles are necessarily the result of some depression in the underlying surface, however slight, and yet it cannot reasonably be argued that every parking lot or roadway containing puddles is in a defective or unsafe condition. *Id.* at 149. In *Cranshaw*, the plaintiff presented his own testimony and photographs in support of his allegation that the parking lot was defective; however plaintiff's photographs of the parking lot provided little solace as they failed to shed any light on whether the lot was in a defective and unsafe condition on the date of the accident. *Id.* at 149-150. Although photographs taken soon after the accident in *Cranshaw* showed puddling, the existence of puddles, without more, cannot lead a reasonable jury to conclude that the parking lot was designed or maintained in a defective condition; thus, summary judgment was granted in favor of the defendants. *Id.; see also Athas*, 904 F.2d 79, 81 (1990) (holding post office could not be liable to patron who fell on its property because "there was no evidence that the wet spots on the Post Office platform resulted from a defective condition").

Plaintiffs' photographs of the alleged condition in this case were purportedly taken in December 2014, approximately 2 months after this alleged accident, and are insufficient to prove the existence of any defective condition on the date of this alleged accident. Plaintiffs have also produced photographs which taken in January 2016 – one year and three months after this alleged accident. Even assuming the existence of a puddle on the date of Mr. Johnson's accident, the mere existence of a puddle - and presumably underlying depression in the underlying surface - is insufficient to establish any negligence attributable to Speedway.

12

As in *Cranshaw* and *Athas*, none of the facts relied upon by the Plaintiffs in this case demonstrate the existence of a defect or defective condition on Speedway's premises. *See Id.*; *see also Athas*, 904 F.2d at 81. No evidence has been proffered and no reasonable inference can be drawn from the evidence to support the Plaintiffs' contention that the puddle constituted a defect for which Speedway should be held responsible. Since there is no evidence demonstrating that the concrete fuel pad and adjacent asphalt paving were defectively designed or maintained in such a manner that puddling resulted, summary judgment in favor of Speedway is appropriate.

### C. Speedway Cannot be Held Liable for Acts of Its Independent Contractor and Owed a Duty to Disclose Only Concealed Defects.

Speedway cannot be held liable for the actions of Mr. Johnson since he was an employee of its independent contractor, Brewer. At no time relevant hereto was the plaintiff, Richard Johnson, acting as an employee or agent of Speedway. Thus, Speedway cannot be held liable for any acts or omissions committed by Mr. Johnson which caused any physical harm to himself or other third parties.

Massachusetts follows the general rule set forth in the Restatement (Second) of Torts §409, which states that "the employer of an independent contractor is not liable for physical harm caused ... by an act or omission of the contractor or his servants. *See Fireman's Fund Ins. Co. v. Falco Const. Corp.*, 493 F. Supp.2d 143, 146 (2007), *citing Santella v Whynott*, 27 Mass. App. Ct. 451,453, 538 N.E. 2d 1009, 1010-1011 (1989). As enunciated by the Supreme Judicial Court, a "person is liable for the negligence of his servants and agents engaged in his business; yet where one is employed under an entire contract for a stipulated sum, and is not under the control of his employer, the relation is held to be that of contractor and contractee, and not that of master and servant..." *Id.*,

*citing Herrick v. City of Springfield*, 288 Mass. 212, 216, 192 N.E. 626, 628 (1934). Additionally, the nature and circumstances of the work performed by Brewer do not involve any "peculiar risk of physical harm" such that an exception to this general rule would be applicable. *Id.* at 147-148.

The standard in Massachusetts for distinguishing between an employee and an independent contractor is as follows: "The essence of the distinction is the right of control. If the person doing the work is responsible only for the performance of what he agrees to do, in the way in which he agrees to do it, and is not subject to direction and control as to every detail of the work, he is an independent contractor." *Munro v. Kehr*, 835 F.Supp. 53, 54 (1993), *citing McDermott's Case*, 283 Mass. 74, 76, 186 N.E. 231, 232-33 (1933).

Where the plaintiff is the employee of an independent contractor, as in this case, the defendant's duty owed to the plaintiff is only to disclose the presence of any **hidden or concealed defects** on the premises of which it was aware or should have been aware through the exercise of reasonable care. *See Findlay v. Rubin Glass & Mirror Co.*, 350 Mass. 169 (1966) (emphasis added), *citing Poirier v. Town of Plymouth*, 4 Mass. App. Ct. 665 (1976), *citing Afienko v. Harvard Club of Boston*, 365 Mass. 320, 327-328, 312 N.E.2d 196, 202 (1974). Where the defect is an open and obvious condition or which could have been discovered by reasonable inspection, the defendant had no duty to warn the plaintiff or to alter the condition. *Id., citing* and *Hannon v. Hayes-Bickford Lunch Sys. Inc.*, supra, 336 Mass. 272-273, 145 N.E.2d 191

Here, the parties entered into a Transportation Agreement which expressly identifies the relationship of Brewer to Hess as one of an independent contractor. The

agreement further specifically states that Brewer is not an employee, agent or representative of Hess and has no authority to act on behalf of or to bind Hess. According to this Agreement, Hess also exercised no control or supervision over Brewer or its employees, agents or representatives. As Brewer's employee, Mr. Johnson is considered an independent contractor and, thus, Speedway cannot be held liable for the acts of Mr. Johnson that caused harm to himself (or third parties).

Moreover, Speedway can only be held liable to its independent contractor, Brewer, for the failure to disclose a hidden or concealed defect. The condition here – the edge of the concrete fuel pad and adjacent asphalt paving – is not a hidden/concealed defect, but rather an open and obvious condition, as discussed above. Speedway cannot be held liable to Brewer for a condition that cannot be characterized as a hidden or concealed defect and, thus, is entitled to summary judgment.

Mr. Johnson's alleged stumbling incident occurred during fuel delivery operations, of which Speedway did not have any supervision or control. In fact, Mr. Johnson admittedly was injured while in the process of filling the fuel tank. He failed to "stand by" while fueling, which is required protocol, and instead proceeded to walk sideways to get into his truck. Speedway cannot be held liable for Mr. Johnson's negligent acts - in failing to standby and walking sideways in an area where the fuel pad meets the concrete and variances in grade may be expected - which caused his own injuries. In addition, Mr. Johnson alleged that he was forced to walk sideways due to the constrained area between the 4-inch hose and the edge of the truck. He did so, although there was *nothing* preventing him from taking a safer route - stepping over the hose and walking straight forward towards the cab of the truck. This "constraint" was of Mr.

15

Johnson's own choosing and of his own making, which caused him to stumble and injure himself.

Speedway was not involved in the fuel delivery process undertaken by Mr. Johnson and did not oversee or supervise Mr. Johnson's fuel delivery process. Mr. Johnson, himself, acted on his own when he parked the truck on or near the concrete fuel pad and placed the fuel hoses near the truck and, perhaps, in too close proximity to the truck. Mr. Johnson failed to stand-by while loading fuel, decided to leave the open fuel tank and proceed to his truck. While facing his truck and walking sideways, Mr. Johnson proceeded sideways off of the edge of the concrete fuel pad and onto the asphalt paving. Mr. Johnson created this constraint - a dangerous situation of his own making and resulting from Mr. Johnson's own negligence - that caused him to stumble and sustain injuries. Speedway cannot be held responsible for the negligent acts of Mr. Johnson as he was an employee of its independent contractor, Brewer.

### D. **Plaintiffs' Expert Testimony Fails to Rely on Reliable Data and, Thus, is Inadmissible to Demonstrate that Speedway Violated any Statute or Regulation.**

The proponent of expert testimony bears the burden of demonstrating that the evidence satisfies Fed. R. Evid. 702 by a preponderance of the evidence, as interpreted by *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993) and its progeny. *See McGovern v. Brigham & Women's Hosp.*, 584 F. Supp. 2d 418, 422 (D. Mass. 2008). An expert's testimony must "rest on a reliable foundation and [be] relevant to the task at hand." *Daubert*, 509 U.S. at 597. "The ultimate purpose of the *Daubert* inquiry is to determine whether the testimony of the expert would be helpful to the jury in resolving a fact in issue." *Hochen v. Bobst Group, Inc.*, 290 F.3d 446, 452 (1st Cir. 2002) (quoting

16

*Cipollone v. Yale Indus. Prod., Inc.*, 202 F.3d 376, 380 (1st Cir. 2000)). Rule 702 requires the plaintiff to show that (1) "the testimony is based upon sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) the witness has "reliably applied the principles and methods to the facts of the case."

First, the Court determines if the expert's data "provides adequate support to mark the expert's testimony as reliable." *Carlucci v. CNH America LLC*, No. 10-12205-DPW, 2012 WL 4094347, at * 3 (D. Mass. Sep. 14, 2012). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). *See also Kumho Tire Co. v. Carmichael* 526 U.S. 137, 157 (1999) (affirming exclusion of tire failure expert where proponent failed to show that other experts used same methodology, failed to refer to any articles or papers validating expert's approach, and failed to argue that expert himself would have relied on similar opinion). Second, to assess the reliability of the expert's principles and methods, the Court examines the reasonableness of the expert's approach and "the method of analyzing the data thereby obtained." *Kumho Tire,* 526 U.S. at 153-54 (1999). The proffered expert must "impart scientific knowledge rather than guesswork." *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998). Third, the proponent must demonstrate that the expert exercised the "intellectual rigor" of an expert in the relevant field in applying his methodology to the facts at hand. *Kumho Tire*, 526 U.S. at 152.

Plaintiffs' expert, Mr. Doddridge, has failed to demonstrate any expertise with the building code and maintenance of gas stations. He has not presented any research or data concerning the repair, maintenance and upkeep of the relevant areas involving the fuel

tank pads and/or fuel fill area. Mr. Doddridge's conclusion of an excessive variation and existence of a tripping hazard due to the lack of maintenance is mere guesswork. His conclusions and expert opinions are not supported by any reliable data, scientific knowledge, recognized principles, methodology or literature.

The ASTM relied upon by Mr. Doddridge is not applicable to this case as this regulation applies to walkways and exterior walkways. The area of Mr. Johnson's alleged stumbling incident occurred at the fuel tank pad and filling area, not on any of the walkways at Speedway. Since the subject area is not within the required *means of egress*[3] from any building, the area in question is not considered a walking surface within the meaning of the Building Code. The ASTM F1637 standard relied upon by Plaintiffs' expert, Mr. Doddridge has not been adopted in Massachusetts. Moreover, this standard would require that all walkway surfaces – which do not apply to this area in question – be made flush to a maximum variation of ¼ inch, which is not practical and would also prohibit any raised curbing.

OSHA regulations, including OSHA 1910.22, apply to "permanent places of employment" and Mr. Johnson's "employer" (i.e. Brewer), not Speedway. Furthermore, these OSHA regulations govern "surface conditions" relating to places of employment, passageways, storerooms, service rooms and walking/working surfaces – none of which are applicable to this case. Moreover, OSHA 1910.22, as cited by the Plaintiffs' expert, incorporates changes to the OSHA regulations that were **not** adopted until publication in the Federal Register on November 18, 2016. Therefore, these regulations were not in

---

[3] A *means of egress* is defined as a "continues and unobstructed path of travel from any point in a building or structure to a public way. 780 CMR 1002.1.

18

effect at the time of the Plaintiffs' alleged accident in October of 2014, which occurred over two (2) years earlier.

The regulations cited by Mr. Doddridge and relied upon to form his expert opinions are wholly irrelevant to the area in question and the facts of this case. As in *Potvin*, there are serious gaps in his expert analysis as Mr. Doddridge fails to explain why the standards on which he relies should apply to a gas station and the area in question. *Potvin*, at 6. The only nexus here, which is insufficient, is that the standards relate to areas where people walk in different circumstances. *Id.* Mr. Doddridge further suggests that his opinion is reliable because of his "extensive experience inspecting retail gas and service stations"; however, he fails to provide any factual support for his opinions. Mr. Doddridge's purported inspections in identifying hazardous conditions and developing of inspection protocols are insufficient to qualify him as an expert in this case. Thus, Mr. Doddridge's expert opinions are inadmissible under Rule 702 and do not support Plaintiffs' claims of negligence against Speedway.

## IV. CONCLUSION

In order for the Plaintiffs' negligence claim to proceed to a jury, the Plaintiffs must establish that that there is a material question of fact as to whether Speedway breached a duty of care owed to Plaintiffs. The subject area – the edge of a concrete fuel pad and adjacent asphalt paving - was not a hazard which required any warning or remedy. Even if the Court concludes that the area is a hazard, Speedway owed no duty to warn of such an open and obvious condition. Moreover, the Plaintiffs have failed to demonstrate that the puddle resulted from any defective condition on Speedway's premises. In addition, Speedway cannot be held liable for acts of its independent

19

contractor and owed a duty to Mr. Johnson to disclose only concealed defects – which this condition is not. Furthermore, the Plaintiffs' expert's opinion is not supported by any reliable data and, thus, is inadmissible to establish a breach of the duty of care as it is mere guesswork that is wholly unsupported by any applicable statutes or regulations. Accordingly, the Plaintiffs cannot establish a breach of the duty of care and Speedway is, thus, entitled to an entry of summary judgment in its favor as a matter of law.

Respectfully submitted,

The Defendant,
Speedway LLC,
By its Attorney,

/s/ Luana DiSarra Scavone
Luana DiSarra Scavone, BBO #650681
Litchfield Cavo LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Phone: 781-309-1500
Fax: 781-246-0167
disarra@litchfieldcavo.com

Date: September 27, 2017

## CERTIFICATION

I hereby certify that on this 27th day of September 2017 the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electric Filing and paper copies will be sent to those indicated as non-registered participants.

/s/ Luana DiSarra Scavone
Luana DiSarra Scavone